IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EMPLOYERS & LABORERS LOCALS 100 &**, **397 PENSION, HEALTH & WELFARE AND ANNUITY FUNDS,**<br><br>     Plaintiffs,<br><br>vs.<br><br>**EHRET, INC.,** and<br>**MARK EHRET,** individually,<br><br>     Defendants. | Case Number: 19-cv-715 |

## COMPLAINT

COME NOW, plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds,** by and through their attorneys, Kelly & Kelley, LLC and for their Complaint against defendants, **Ehret, Inc.,** and **Mark Ehret,** individually**,** state as follows:

### Count I
### Ehret, Inc.
### 29 U.S.C. §§ 1132, 1145

COME NOW, plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds,** by and through their attorneys, Kelly & Kelley, LLC and for Count I of their Complaint against defendant, **Ehret, Inc.,** state as follows:

1.      This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132,1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2. Plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds**, are pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

3. Defendant, **Ehret, Inc.,** is a corporation organized under the laws of the State of Illinois that is conducting business in the State of Illinois, and is an employer as defined under ERISA.

4. An authorized representative of defendant executed an Assignment of Collective Bargaining Rights on July 22, 2016. Said Assignment of Collective Bargaining Rights bound the defendant to Certain Bargaining Agreements. Please see Exhibit 1 attached hereto and incorporated by reference herein.

5. Exhibit 1 pertinently provides:

> **"The undersigned Contractor designates the Southern Illinois Builders Association ("SIBA") as its sole and exclusive bargaining representative for the negotiation of collective bargaining agreements for on-site construction work with the labor organizations indicated below (initial all that apply)."** Please see paragraph 1 of Exhibit 1.
>
> **"This authorization supersedes all other existing at this time and shall remain in full force and effect unless terminated by 60 days prior written notice to SIBA. NOTE: Bargaining authorizations given to the SIBA may not be canceled or terminated after negotiations with the identified labor organizations have commenced until after new agreements have been reached and the Contractor will be bound by the agreement until it expires."** Please see Paragraph 2 of Exhibit 1"
>
> **"Any collective bargaining agreements negotiated by the SIBA pursuant to this delegation of bargaining rights shall become final and binding upon ratification by the SIBA."** Please see Paragraph 4 of Exhibit 1.

6. Defendant has not given written notification of its intent to terminate the Assignment referenced as exhibit 1. As such, said agreement remains in effect and the parties are bound to same.

7. In addition, authorized representative of defendant executed another Assignment of Collective Bargaining Rights on December 13, 2018. Said Assignment of Collective Bargaining Rights bound the defendant to Certain Bargaining Agreements. Please see Exhibit 2 attached hereto and incorporated by reference herein.

8. Exhibit 2 pertinently provides:

> **"The undersigned Contractor designates the Southern Illinois Builders Association ("SIBA") as its sole and exclusive bargaining representative for the negotiation of collective bargaining agreements for on-site construction work with the labor organizations indicated below (initial all that apply)."** Please see paragraph 1 of Exhibit 2.
>
> **"This authorization supersedes all other existing at this time and shall remain in full force and effect unless terminated by 60 days prior written notice to SIBA. NOTE: Bargaining authorizations given to the SIBA may not be canceled or terminated after negotiations with the identified labor organizations have commenced until after new agreements have been reached and the Contractor will be bound by the agreement until it expires."** Please see Paragraph 2 of Exhibit 2"
>
> **"Any collective bargaining agreements negotiated by the SIBA pursuant to this delegation of bargaining rights shall become final and binding upon ratification by the SIBA."** Please see Paragraph 4 of Exhibit 2.

9. Defendant has not given written notification of its intent to terminate the Assignment referenced as exhibit 2. As such, said agreement remains in effect and the parties are bound to same.

10. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Southwestern Illinois Laborers' District Council (12 Counties) Memorandum of Agreement. The Memorandum of Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 3 and incorporated by reference herein.

11. Exhibit 3 pertinently provides:

**"It is agreed that this Contract shall cover all of the following Locals located in Bond, Calhoun, Clinton, Greene, Jersey, Macoupin, Madison, Monroe, Montgomery, Randolph, St. Clair and Washington Counties:**

> **Greenville No. 622; Carlyle No. 581; Alton No. 218; Collinsville No. 44; Wood River No. 338; Columbia No. 196; Hillsboro No. 1084; Belleville No. 459;** Please see Article 2 of exhibit 3.

"**Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the event the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connection with the collection of any fringe benefits."** Please see Article 9.a of exhibit 3.

**"Any part of the negotiated wage increase may be taken in fringe benefits (Welfare, Pension, and/or Annuity) provided the Local Union gives written notice to the Employer and the District Council ninety (90) days in advance of such increase becoming due and payable"**  Please see Article 9.b of exhibit 3.

**"Commencing August 1, 2016, the Employer agrees to make payments to the Southern Illinois Laborers' & Employers' Welfare Fund and be bound by the Southern Illinois Laborers' & Employers' Welfare Fund Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement.  The Employer shall pay to the Southwestern Illinois Laborers' Welfare Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."**  Please see Article 9.f of exhibit 3.

**"Commencing August 1, 2016, the Employer agrees to make payments to the Southwestern Illinois Laborers' Annuity Fund and be bound by the Southwestern Illinois Laborers' Annuity Fund Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement.  The Employer shall pay to the Southwestern Illinois Laborers' Annuity Fund the amount listed in Schedules A, B, and**

> **C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.g of exhibit 3.

> **"This Agreement shall be effective August 1, 2016 and shall remain in full force and effect through July 31, 2019. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 29 of exhibit 3.

12. Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and Exhibit 2. As such, Exhibit 3 remains in effect and the parties are bound to same.

13. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Memorandum of Agreement Laborers' Local 100. The Memorandum of Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 4 and incorporated by reference herein.

14. Exhibit 4 pertinently provides:

> **"This Memorandum of Agreement made and entered into by and between the SOUTHERN ILLINOIS BUILDERS' ASSOCIATION, SOUTHERN ILLINOIS CONTRACTORS ASSOCIATION, SIGNATORY EMPLOYERS, hereinafter referred to as EMPLOYER and LOCAL UNINO NO. 100 OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, hereinafter referred to as the UNION."** Please see Paragraph 1 of Exhibit 4.

> **"In addition to the foregoing rates, the employer shall contribute Health and Welfare $8.00 per hour for regular hours worked; $12.00 per hour for hours worked at the time and one-half rate; and $16.00 per hour for hours worked at the double time rate. Pension contributions $9.25 per hour for regular hours worked; $13.88 per hour for hours worked at the time and one-half rate; $18.50 per hour for hours worked at the double time rate. Annuity contributions will be paid at the rate of $3.00 per hour for all regular hours worked, $4.50 for all hours worked at the time and a half rate, $6.00 per hour for hours worked at the double time**

> **rate. Such payments are due and payable to the Employers and Laborers' Local 100 and 397 Health and Welfare and Pension Funds.**" Please see Article No 2., Section 3 of Exhibit 4.

> **"This Agreement shall be effective on August 1, 2016 and shall remain in full force and effect through July 31, 2019 and shall automatically renew from year to year unless either party gives notice in writing to the other party sixty (60) days but not more than one hundred twenty (120) days before the contract expiration date that it desires to terminate this agreement. Notice to modify the contract with respect to any provision given by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative."** Please see Article No. 3 of Exhibit 4.

15. Defendant has not given written notification of its intent to terminate the Assignments referenced as Exhibit 1 and Exhibit 2. As such, Exhibit 4 remains in effect and the parties are bound to same.

16. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Collective Bargaining Agreement Laborers' Local 397. The Collective Bargaining Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 5 and incorporated by reference herein.

17. Exhibit 5 pertinently provides:

> **"In addition to the foregoing rates, effective August 1, 2016 the Employer shall contribute $21.68 per hour for regular hours worked; $31.805 per hour for hours worked at the time and one half rate; and $41.93 per hour for hours worked at the double time rate. Such payments are due and payable to the Employers and Laborers' Locals 100 & 397 Health and Welfare & Pension Funds"** Please see Article #7, Paragraph 3 of Exhibit 5.

> **"This agreement shall be effective on August 1, 2016 and shall remain in full force and effect through July 31, 2019 and shall automatically renew from year to year unless either party gives notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to wages and hours given by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative"** Please see Article #19 paragraph 4 of Exhibit 5.

18.     Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and exhibit 2. As such, Exhibit 5 remains in effect and the parties are bound to same.

19.     Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Memorandum of Agreement Local 670 & 742. The Memorandum of Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 6 and incorporated by reference herein.

20.     Exhibit 6 pertinently provides:

> **"This Memorandum of Agreement made and entered into by and between the SIGNATORY EMPLOYER, hereinafter referred to as the Employer, and Local No. 670 and Local No. 742 of the Laborers' International Union of North America, hereinafter known as to the Union, which is chartered and has jurisdiction over the above mentioned work in O'Fallon, Shiloh, Lebanon, Scott Air Force Base, Fairview Heights, Renton, Summerfield, Aviston, Mascoutah, New Memphis, Troy, New Baden, St. Louis Mid America Airport, Damiansville and Vicinity in Illinois, and hereinafter known as the Contractor."** Please see Article 1 of Exhibit 6.

> **"Commencing August 1, 2016, the Employer agrees to make payments to the Southern Illinois Laborers' & Employers' Welfare Fund and be bound by the Southern Illinois Laborers' & Employers' Welfare Fund Trust Agreement, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement. The Employer shall pay to the Southern Illinois Laborers' & Employers' Welfare Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.f of exhibit 6.

> **"Commencing August 1, 2013, the Employer agrees to make payments to the Southwestern Illinois Laborers' Annuity Fund and be bound by the Southwestern Illinois Laborers' Annuity Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust**

**Agreement.  The Employer shall pay to the Southwestern Illinois Laborers' Annuity Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."**  Please see Article 9.g of exhibit 6.

**"This Agreement shall be effective August 1, 2016 and shall remain in full force and effect through July 31, 2019. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 29 of exhibit 6.

21. Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and exhibit 2.  As such, Exhibit 6 remains in effect and the parties are bound to same.

22. Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Assignment of Collective Bargaining Rights Agreements (Exhibits 3-6).

23. Between July, 2016 through the present, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

24. Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

25. As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

    (a) To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements; and

(b) To make all of its payroll books and records available to plaintiffs for the purpose of auditing same, to determine whether defendant is making full payments as required under the applicable agreements;

(c) To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. §1132 (g);

(d) To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs;

(e) To pay plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

26. Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

(a) Defendant has failed to make payment of contributions and liquidated damages; and

(b) Defendant has been delinquent in reporting the hours worked by employees.

27. Upon careful review of all records maintained by plaintiffs, prepared and submitted by defendant, there is Ninety-Two Thousand Sixteen Dollars and Forty-Five Cents ($92,016.45) known to be due and owing from defendant to plaintiffs. Please see the Revised Breakdown of Amounts Due and Owing attached hereto as Exhibit 7 and incorporated by reference herein.

28. The known amounts owed are based upon the defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

29. Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

30. Plaintiffs have requested defendant to perform its obligations as aforesaid, but defendant has failed and refused to so perform.

31. Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **Ehret, Inc.** as follows:

(a) That defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports while this is pending, and to comply with its contractual obligation to timely submit such reports in the future;

(b) That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c) Judgment be entered against defendant and defendant be decreed to pay to the plaintiffs a sum of Ninety-Two Thousand Sixteen Dollars and Forty-Five Cents ($92,016.45), plus whatever sums are determined to be due;

(d) That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(e) That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant' cost.

**Count II**
**Mark Ehret, Individually**
**29 U.S.C. §§ 1132, 1145**

COME NOW plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds** by and through their attorneys, by and through their attorneys, Kelly & Kelley, LLC and for Count II of their Complaint against defendant, **Mark Ehret,** individually**,** state as follows:

1. This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132,1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2. Plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds**, are various pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

3. Defendant, **Mark Ehret**, is an individual conducting business in the State of Illinois, a signatory to an agreement with plaintiffs, and is an employer as defined under ERISA.

4. Defendant executed an Assignment of Collective Bargaining Rights on July 22, 2016.  Said Assignment of Collective Bargaining Rights bound the defendant to Certain Bargaining Agreements.  Please see Exhibit 1 attached hereto and incorporated by reference herein.

5. Exhibit 1 pertinently provides:

**"The undersigned Contractor designates the Southern Illinois Builders Association ("SIBA") as its sole and exclusive bargaining representative for the negotiation of collective bargaining agreements for on-site construction work with the labor organizations indicated below (initial all that apply)."** Please see paragraph 1 of Exhibit 1.

**"This authorization supersedes all other existing at this time and shall remain in full force and effect unless terminated by 60 days prior written notice to SIBA. NOTE: Bargaining authorizations given to the SIBA may not be canceled or terminated after negotiations with the identified labor organizations have commenced until after new agreements have been reached and the Contractor will be bound by the agreement until it expires."** Please see Paragraph 2 of Exhibit 1"

**"Any collective bargaining agreements negotiated by the SIBA pursuant to this delegation of bargaining rights shall become final and binding upon ratification by the SIBA."** Please see Paragraph 4 of Exhibit 1.

6. Defendant has not given written notification of its intent to terminate the Assignment referenced as exhibit 1. As such, said agreement remains in effect and the parties are bound to same.

7. In addition, Defendant executed another Assignment of Collective Bargaining Rights on December 13, 2018. Said Assignment of Collective Bargaining Rights bound the defendant to Certain Bargaining Agreements. Please see Exhibit 2 attached hereto and incorporated by reference herein.

8. Exhibit 2 pertinently provides:

**"The undersigned Contractor designates the Southern Illinois Builders Association ("SIBA") as its sole and exclusive bargaining representative for the negotiation of collective bargaining agreements for on-site construction work with the labor organizations indicated below (initial all that apply)."** Please see paragraph 1 of Exhibit 2.

**"This authorization supersedes all other existing at this time and shall remain in full force and effect unless terminated by 60 days prior written notice to SIBA. NOTE: Bargaining authorizations given to the SIBA may not be canceled or terminated after negotiations with the identified labor organizations have commenced until after new agreements have**

**been reached and the Contractor will be bound by the agreement until it expires."** Please see Paragraph 2 of Exhibit 2"

**"Any collective bargaining agreements negotiated by the SIBA pursuant to this delegation of bargaining rights shall become final and binding upon ratification by the SIBA."** Please see Paragraph 4 of Exhibit 2.

9. Defendant has not given written notification of its intent to terminate the Assignment referenced as exhibit 2. As such, said agreement remains in effect and the parties are bound to same.

10. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Southwestern Illinois Laborers' District Council (12 Counties) Memorandum of Agreement. The Memorandum of Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 3 and incorporated by reference herein.

11. Exhibit 3 pertinently provides:

**"It is agreed that this Contract shall cover all of the following Locals located in Bond, Calhoun, Clinton, Greene, Jersey, Macoupin, Madison, Monroe, Montgomery, Randolph, St. Clair and Washington Counties:**

**Greenville No. 622; Carlyle No. 581; Alton No. 218; Collinsville No. 44; Wood River No. 338; Columbia No. 196; Hillsboro No. 1084; Belleville No. 459;** Please see Article 2 of exhibit 3.

**"Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the event the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connection with the collection of any fringe benefits."** Please see Article 9.a of exhibit 3.

**"Any part of the negotiated wage increase may be taken in fringe benefits (Welfare, Pension, and/or Annuity) provided the Local Union gives written notice to the Employer and the District Council ninety (90) days in advance of such increase becoming due and payable"** Please see Article 9.b of exhibit 3.

**"Commencing August 1, 2016, the Employer agrees to make payments to the Southern Illinois Laborers' & Employers' Welfare Fund and be bound by the Southern Illinois Laborers' & Employers' Welfare Fund Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement. The Employer shall pay to the Southwestern Illinois Laborers' Welfare Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.f of exhibit 3.

**"Commencing August 1, 2016, the Employer agrees to make payments to the Southwestern Illinois Laborers' Annuity Fund and be bound by the Southwestern Illinois Laborers' Annuity Fund Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement. The Employer shall pay to the Southwestern Illinois Laborers' Annuity Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.g of exhibit 3.

**"This Agreement shall be effective August 1, 2016 and shall remain in full force and effect through July 31, 2019. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 29 of exhibit 3.

12. Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and Exhibit 2. As such, Exhibit 3 remains in effect and the parties are bound to same.

13. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Memorandum of Agreement Laborers' Local 100. The Memorandum of Agreement dated August 1, 2016

thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 4 and incorporated by reference herein.

    14.    Exhibit 4 pertinently provides:

> **"This Memorandum of Agreement made and entered into by and between the SOUTHERN ILLINOIS BUILDERS' ASSOCIATION, SOUTHERN ILLINOIS CONTRACTORS ASSOCIATION, SIGNATORY EMPLOYERS, hereinafter referred to as EMPLOYER and LOCAL UNINO NO. 100 OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, hereinafter referred to as the UNION."** Please see Paragraph 1 of Exhibit 4.
>
> **"In addition to the foregoing rates, the employer shall contribute Health and Welfare $8.00 per hour for regular hours worked; $12.00 per hour for hours worked at the time and one-half rate; and $16.00 per hour for hours worked at the double time rate. Pension contributions $9.25 per hour for regular hours worked; $13.88 per hour for hours worked at the time and one-half rate; $18.50 per hour for hours worked at the double time rate. Annuity contributions will be paid at the rate of $3.00 per hour for all regular hours worked, $4.50 for all hours worked at the time and a half rate, $6.00 per hour for hours worked at the double time rate. Such payments are due and payable to the Employers and Laborers' Local 100 and 397 Health and Welfare and Pension Funds."** Please see Article No 2., Section 3 of Exhibit 4.
>
> **"This Agreement shall be effective on August 1, 2016 and shall remain in full force and effect through July 31, 2019 and shall automatically renew from year to year unless either party gives notice in writing to the other party sixty (60) days but not more than one hundred twenty (120) days before the contract expiration date that it desires to terminate this agreement. Notice to modify the contract with respect to any provision given by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative."** Please see Article No. 3 of Exhibit 4.

    15.    Defendant has not given written notification of its intent to terminate the Assignments referenced as Exhibit 1 and Exhibit 2. As such, Exhibit 4 remains in effect and the parties are bound to same.

    16.    Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Collective Bargaining Agreement Laborers' Local 397. The Collective Bargaining Agreement dated

August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 5 and incorporated by reference herein.

17. Exhibit 5 pertinently provides:

> "In addition to the foregoing rates, effective August 1, 2016 the Employer shall contribute $21.68 per hour for regular hours worked; $31.805 per hour for hours worked at the time and one half rate; and $41.93 per hour for hours worked at the double time rate. Such payments are due and payable to the Employers and Laborers' Locals 100 & 397 Health and Welfare & Pension Funds" Please see Article #7, Paragraph 3 of Exhibit 5.

> "This agreement shall be effective on August 1, 2016 and shall remain in full force and effect through July 31, 2019 and shall automatically renew from year to year unless either party gives notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to wages and hours given by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative" Please see Article #19 paragraph 4 of Exhibit 5.

18. Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and exhibit 2. As such, Exhibit 5 remains in effect and the parties are bound to same.

19. Pursuant to Exhibit 1 and Exhibit 2, defendant is bound by the Memorandum of Agreement Local 670 & 742. The Memorandum of Agreement dated August 1, 2016 thru July 31, 2019 binds defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as Exhibit 6 and incorporated by reference herein.

20. Exhibit 6 pertinently provides:

> "This Memorandum of Agreement made and entered into by and between the SIGNATORY EMPLOYER, hereinafter referred to as the Employer, and Local No. 670 and Local No. 742 of the Laborers' International Union of North America, hereinafter known as to the

> **Union, which is chartered and has jurisdiction over the above mentioned work in O'Fallon, Shiloh, Lebanon, Scott Air Force Base, Fairview Heights, Renton, Summerfield, Aviston, Mascoutah, New Memphis, Troy, New Baden, St. Louis Mid America Airport, Damiansville and Vicinity in Illinois, and hereinafter known as the Contractor."** Please see Article 1 of Exhibit 6.
>
> **"Commencing August 1, 2016, the Employer agrees to make payments to the Southern Illinois Laborers' & Employers' Welfare Fund and be bound by the Southern Illinois Laborers' & Employers' Welfare Fund Trust Agreement, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement.  The Employer shall pay to the Southern Illinois Laborers' & Employers' Welfare Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.f of exhibit 6.
>
> **"Commencing August 1, 2013, the Employer agrees to make payments to the Southwestern Illinois Laborers' Annuity Fund and be bound by the Southwestern Illinois Laborers' Annuity Trust Agreements, including any amendments or changes thereto, and the Employer accepts as Trustees those Trustees selected in the manner provided in said Trust Agreement.  The Employer shall pay to the Southwestern Illinois Laborers' Annuity Fund the amount listed in Schedules A, B, and C for each hour worked or portion thereof, for which the Employee receives pay, or is entitled to receive pay pursuant to this Agreement."** Please see Article 9.g of exhibit 6.
>
> **"This Agreement shall be effective August 1, 2016 and shall remain in full force and effect through July 31, 2019. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 29 of exhibit 6.

21. Defendant has not given written notification of its intent to terminate the Assignments referenced as exhibit 1 and exhibit 2.  As such, Exhibit 6 remains in effect and the parties are bound to same.

22. Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Assignment of Collective Bargaining Rights Agreements (Exhibits 3-6).

23. Between July, 2016 through the present, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

24. Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

25. As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

(a) To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements; and

(b) To make all of its payroll books and records available to plaintiffs for the purpose of auditing same, to determine whether defendant is making full payments as required under the applicable agreements;

(c) To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. §1132 (g);

(d) To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs;

(e) To pay plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

26. Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

      (a)    Defendant has failed to make payment of contributions and liquidated damages; and

      (b)    Defendant has been delinquent in reporting the hours worked by employees.

27.    Upon careful review of all records maintained by plaintiffs, prepared and submitted by defendant, there is Ninety-Two Thousand Sixteen Dollars and Forty-Five Cents ($92,016.45) known to be due and owing from defendant to plaintiffs. Please see the Revised Breakdown of Amounts Due and Owing attached hereto as Exhibit 7 and incorporated by reference herein.

28.    The known amounts owed are based upon the defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

29.    Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

30.    Plaintiffs have requested defendant to perform its obligations as aforesaid, but defendant has failed and refused to so perform.

31.    Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Employers & Laborers Locals 100 & 397 Pension, Health and Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **Mark Ehret,** individually, as follows:

      (a)    That defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports

    while this is pending, and to comply with its contractual obligation to timely submit such reports in the future;

(c) That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c) Judgment be entered against defendant and defendant be decreed to pay to the plaintiffs a sum of Ninety-Two Thousand Sixteen Dollars and Forty-Five Cents ($92,016.45), plus whatever sums are determined to be due;

(d) That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(e) That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant' cost.

              By: */s/ Chet A. Kelly*
                 Chet A. Kelly
                 #6296905

Kelly & Kelley, LLC
Attorneys for Plaintiffs
6 E. Washington St.
Belleville, IL 62220
(618) 234-7977
Kelly.chet@gmail.com